The opinion of the Court was delivered by
Poché, J.
The object of this suit is to recover $3,000 from the defendant, on a cause of action which can be more easily understood by referring to tbe following affidavit, draft or order, and assignment of the latter, which are made the basis of plaintiff’s action, and which we reproduce in full.
Affidavit.
State of Mississippi, ? Lowndes County. £
Before me, J. Stallings, Clerk of tbe Circuit Court of said county, came personally, Nathaniel E. Goodwin, who is well known to me, and being duly sworn, says: that be has been the cashier of the Columbus Insurance and Banking Company of Columbus, Mississippi, for many years, and that be still bolds that position; that as sucli officer be has sold and issued to Mr. John M. Morgan, at various dates, sight drafts or checks on his correspondent in New Orleans — some of them for large sums; that from a period prior to the year 1860, to the present time, his correspondent in New Orleans was the Mechanics’ and Traders’1 Bank; that all such drafts or checks were addressed to and drawn on said bauk; that a careful record and account of same was kept by retained stubs and other memoranda, needful to insure a proper description of same, and suitable credits to tbe bank so drawn upon; that owing to tbe loss of the stubs and other memoranda so kept — at tlie burning of many business bouses in Selma, Ala., when occupied by the Federal army, where bis books' and papers bad been stored as a supposed place of safety — tbe affiant is unable to ascertain dates, numbers or specific amounts of any drafts or checks drawn by him, on said bank (in New Orleans) from some date prior to tlie year 1860, till after the surrender or cessation of tbe hostilities; that during such time no draft or check was predicated and drawn upon any other basis than tlie balance shown by Ms book to be due by that bank.
Affiant further says: That on or about tbe 21st day of April, 1862, lie sent a special messenger to New Orleans with his draft on said bank for the sum of thirteen thousand dollars, which was promptly paid, hut *153 that the payment of this draft or any other draft or cheek, drawn by him, did not in any particular interfere with or diminish any moneys in the hands of said Nerv Orleans correspondent needed to pay outstanding checks or drafts, and that all such money remained there till after the city of New Orleans was taken possession of by the Federal forces. After that, he is advised that said bank paid over, pursuant to a certain order emanating from them, all moneys remaining in said correspondent’s hands, by reason of the non-presentation and consequent non-payment of outstanding checks or drafts; that the sum so paid was about four thousand dollars.
Affiant further says : That from memoranda shown him by Mr. John M. Morgan, in the year 1870 or 1871, he had reason to believe, and that he does still verily believe, that in the year 1860 or 1861, he sold and issued to said Morgan, at least one draft, for three thousand dollars.
Finally, affiant says: That those things stated in this affidavit from memory, he verily believes to be correct, and that such as are derived from memoranda of his own, or others, are in accordance therewith. N. E. Goodwin.
Sworn to and subscribed, before me, February 9, 1875.
J. Stallings, Clerk.
Draft or Order.
Columbus Insurance and Banking Company, ? Columbus, Miss., January 29, 1875. $
Moses Harris, Esq., Cashier Mechanics1 mul Traders1 Bank, New Orleans, Louisiana :
Having reference to the facts set forth in the foregoing affidavit, you' are hereby authorized and directed to pay to John M. Morgan, or order, three thousand dollars, part of balance iii your hands at our credit at the occupation of New Orleans by the Federal forces in April, 1862; provided, there shall not. have been presented, and paid, our original draft on you in favor of said Morgan for same amount, alleged to be lost.
You are also hereby notified, that if is understood by said Morgan, and ourselves, that the payment of this order cancels and satisfies the original and missing draft of three thousand dollars. And, furthermore, that no recourse is, in any event, to be had or claimed of or against this institution. N. E. Goodwin, Cashier.
Endorsement :
Without recourse on me, pay to H. S. Bennett, or order.
John M. Morgan.
*154 After pleading a general denial, the defendant avers its want of responsibility on the first draft, for want of privity thereto, and sets forth a payment under compulsion of the Military Authorities of the United States, to said authorities of the balance in its possession to the credit of the Columbus Bank, in September, 1863, and the subsequent acquiescence of said bank in such payment, and it further sets up the plea of prescription of five and ten years.
This appeal is taken by the defendant from a judgment in favor of plaintiff for the full amount of his claim.
The questions presented by the pleadings are not free of difficulty, both on the facts and on the law of the case, and have necessitated on our part a very patient and thorough examination of the evidence in the Record, and a close study of all the authorities referred to by counsel on both sides, and this investigation has led us to the conclusion, that there is error in the judgment of our learned brother of the District Court, who should, in our opinion, have sustained the defense resting on the alleged payment by compulsion to the United States Military Authorities, and the subsequent acquiescence of the Columbus Bank in such payment.
We accept the theory of plaintiff, which is strenuously resisted by defendant, that his right of action in this cause is as ihe assignee of the Columbus Bank, up to the amount of three thousand dollars, of such balance as stood to the credit of the Columbus Bank in the defendant Bank at the date of the occupation of New Orleans by the United States Military Arrthorities, in April, 1862, and that he is clothed with full power to enforce all the rights of the Columbus Bank to such balance, and that he is subject, on the other hand, to all the defenses which could be successfully urged against that bank, his assignor.
As we read the Record, we find the following facts as bearing on that part of the defense which we have concluded to sustain :
■ For several years previous to, and during the first years of the late civil war, the defen dantwms the New Orleans correspondent of the Columbus Bank, collecting its remittances by drafts or other money orders, and paying out the same on its orders, and thattouching such funds thus collected and thus paid out, the relation between the two banks was that of creditor and debtor. Hence it follows, that all drafts or checks of the creditor bank, on the defendant bank, previous to the 16th of September, 1861 — after which date all the banks situated in localities subject to confederate authority or rule, were compelled to pay nothing but Confederate notes — were to be, and were actually, paid in the currency of bank notes, equivalent in value to gold.
Therefore, after the order compelling the payment in Confederate notes alone, the funds of the defendant’s creditors became mingled *155 with its own funds, and checks subsequently drawn were against the balances due on the 16th of September, 1861, made payable in Confederate notes, under the same account which had been kept previous, and up to said date.
Hence, we hold that plaintiff and the District Judge were in error in contending that the balance of $6,161.63, to the credit of the Columbus Bank, on the 16th of Sei>tember, 1861, was a gold or specie balance, which should have been kept separate and distinct from the transactions carried on between the two banks immediately and subsequently thereafter; and that they were in error in crediting all subsequent collections made by the defendant to the separate1 account for Confederate notes, and in debiting to such account the checks or orders of the creditor on the debtor bank, by which process of calculation and reasoning, they reached a result showing that in May, 1863, the Columbus Bank was, a debtor to the Mechanics’ Bank in Confederate money in the sum of $1,517.65, and a creditor to the same in specie in the sum of $5,161.93.
Such was not the legal effect of the order emanating from the ruling or governing power at the time, and such was not the understanding of the parties.
As assignee of the Columbus Bank, plaintiff must be bound, and his rights are therefore controlled, by the previous acts of his assignor. Now, in a letter written on tire 18th of July, 1865, to the defendant by N. E. Goodwin, the cashier of the Columbus Bank, touching the very matters now at issue, we find the following language: “Your debit balance as shown by our ledger is, and has been from that time (April 24, 1862,) $1,855.83 ; will you have the goodxress to refer and render such statement as may seem needful, designating balance that may remain subject to my checks,” etc.
In making out the balance, Mr. Goodwin had credited the defendant with the check of $3,000, held and lost by plaintiff, and in its account the defendant 'had not taken credit for that check, which had never been presented; and thus it appears that the two accounts agreed to a few dollars, and hence we see, that the continuous account, as kept by the defendant, without discriminating between a specie and a Con- • federate basis, was understandingly concurred* in by its creditor, and hence we conclude, that in September, 1863, when the seizure was made by tire military authorities the debit balance of the defendant was the sum of $4,644, as urged by defendant.
The Kecord shows that after the 16th of-September, 1861, the two corporations continued their previous dealings; that large remittances, •including several drafts on the Confederate States Treasurer, were collected in Confederate money by the defendant, and that a long series *156 of drafts of the creditor bank were paid in the same currency by the defendant, to the knowledge of the Columbus Bank, and that on the 24th of April, 1862, a payment of $13,000 in Confederate money was made to, and accepted by, the creditor bank, through an express messenger, sent for the purpose, and that on May 23d, 1863, a check of the creditor for $2,000 was paid by the defendant in the same kind of currency; and the conclusion is irresistible, that if at that time the creditor had sent a messenger to withdraw its final balance, a payment of the said balance would have been made in Confederate money, and that such a payment accepted by the Columbus Bank, or its agent, would have closed its account with the defendant.
This conclusion rests on a doctrine which is settled by the jurisprudence of the country, too well and too generally known to require any special reference of authority in its support.
The question remaining for solution is, therefore, whether the Record discloses a settlement or a payment of its debit balance by the defendant, equivalent to the payment which is predicated in the foregoing hypothesis.
The payment set up by the defendant was made to the quartermaster of the department in which New Orleans was situated, under and in obedience to an order emanating from the commanding general, under date of August 17, 1863, requiring all banks in this city “ to pay over to the quartermaster all monies in their possession or having upon their books to the credit of any corporation * * * in hostility to the United States; ” and this payment is evidenced by the following receipt, bearing date September 10,1863, signed by the officer designated under the order for the purpose of receiving such payments, as follows:
“ Received, New Orleans, September 10, 1863, from the Mechanics’ and Traders’ Bank, pursuant to special order No. 202, forty-eight thousand four hundred and fifty-five and 78-100 dollars in Confederate notes, being the aggregate amount of the balances held by said Bank to the credit of the several banks named in the following list, located in the so-called Confederate States, in the amounts respectively affixed to each: Columbus Life and General Insurance Company, $4,644.00; Bank of Memphis, $43,T64.17; Bank of Richmond, $67.16; Wetumpka Insurance Company, $584.45,
“ Signed; Jno. W. McClure,
“ Capt. A. Q. M.”
But plaintiff urges that this settlement is absolutely null and void, first, because the order of the commanding general was issued without authority, and secondly, because the debtor of a specie balance, cannot be legally discharged by a payment made in Confederate money.
*157 His first proposition is sustained by tbe decision of tbe Supreme Court of the United States in the case of Planters’ Bank vs. Union Bank, 16 Wal. 483, in which a similar order, emanating from the same general, was declared a nullity, and in which it was held that a payment made thereunder did not satisfy the debt.
We are free to confess that if the question were a new one, we would feel constrained to reach a different conclusion; and that guided by the light of the sad and gloomy history of the times, when the will or the edict of a general commanding a department, comprising a conquered territory, backed by a large army, and by the terrors of a dungeon on a barren and desolate island, was the only law of the land, to resist which the people were powerless, we would hold that a payment made under such pressure and compulsion would, in legal effect, be equivalent to a payment, made to the creditor; but we bow in respectful submission to the mandate of that exalted tribunal.
In support of his second proposition, plaintiff relies upon . the decision in the case of Nelligan vs. Citizens’ Bank, 21 A. 332, where it was held that a payment made in obedience to a similar order, in Confederate money, could not discharge the bank, unless it was shown that the deposit had been made in that currency.
In that case, in which the order of the general commanding was recognized as binding, the amount claimed by plaintiff was a single deposit made by a cheek in his favor, and the evidence did not show that the funds collected by the bank on the check were Confederate notes.
This feature strikingly differentiates the case from the one at bar, and cannot therefore determine the issue which now concerns us. .
Admitting, therefore, under the authority of the case in 16th Wallace, that the payment made under order No. 202, was not a legal payment, we have before us the undisputed fact, that the debit balance due by the defendant, was paid over to the military authorities in obedience to, and in full convpliauoe with the orders of the commanding general, and that such payment was accepted by the quartermaster. The order to the Mechanics’ Bank was to pay over to the quartertermaster the balance due to the Columbus Bank, and the officer certifies that he received payment of such balance in Confederate notes.
Admitting that the person who received such payment was not properly authorized thereto, and was not. invested with all the rights of the creditor, we must now consider whether, by any of its acts or conduct., the Columbus Bank could be held legally bound by such payment. -
From the Becord we gather the following facts: That through the *158 press and through other sources, Mr. Goodwin, the cashier, knew during the war that seizures had been made in New Orleans by the Federal authorities, of all the balances due to banks and other corporations situated within the Confederate lines.
On the 18th of July, 1865, he writes to defendant for the purpose of inquiring into the state of his account. On the 25th of July following, he is answered, that on the 10th of September, 1863, his balance, which was $4644, was paid over to Capt. McClure, U. S. A., under the compulsory effect of order No. 202. Now, under the light of this litigation, one would naturally expect from Goodwin, an answer repudiating such a payment, and holding the defendant responsible for his balance thus wrongfully disposed of; buthfar from it we find in his answer the following words, as the only reference to the subject:
“ Your prompt favor of the 25th inst., covering statement of account is to-day received. Captain McClure, U. S. A., under and by virtue of order 202, hit its a very dirty Hole, when he took our ledger balance at your bank, ($4644) as in this was included near $3000 of outstanding check.”
After this follows a friendly and a business correspondence between the cashiers of the two banks, in which the Columbus Bank asks and obtains from the defendant, useful information on divers subjects. In a letter of Goodwin’s, of October 11th, 1865, he says to defendant:
“ I doubt not that ere this, the effort has been made by some of the banks who lost their balances in your city, under the operation of order No. 202, for their recovery. Will you please advise me as to their progress or prospects 9”
We hold the language in the first quotation as indicating no desire to repudiate the settlement, but as justifying the belief that, in the opinion of the writer, the Columbus Bank, and not the defendant, had been injured by the act of the military axithorities, and as justifying the construction of such language as an acquiescence in the settlement reported by the defendant, and that the language in the second quotation, indicates an unmistakable acquiescence in the reported payment, and a conclusion that the Columbus Bank saw no prospect of recovery but in the supposed effort to be made by the banks in this city.
Later, in March, 1866, the Columbus Bank, re-opens an account with the defendant on the same basis, but which, in the language of its cashier, is to “ be wholly distinct from the former account involving Confederate issues.”
In a letter of March 26, 1866, the same officer says to the defendant: il I need hardly remark that any outstanding checks by me upon your bank, (say for convenience) prior dates to this month are not to be paid from any balance created by thease recent remittances.”
*159 We construe this language as clearly meaning that the former account was finally and irrevocably closed.
We have carefully read and considered all the correspondence, and searchingly scanned and analyzed all the business dealings and transactions which took place .between these two banks for a long series ' of years following the knowledge imparted to the Columbus Bank, of the payment made by the defendant of its balance, and we fail to discover a word or a single action indicating the remotest intention on its part to repudiate that settlement or payment.
Under the miles of law so uniformly expounded in our jurisprudence by an unbroken line of decisions, which we have diligently studied, we hold that the Columbus Bank, having full knowledge of the settlement made of its balance by its debtor, has by its omission to repudiate such settlement, and by its silence, lasting more than nine years, fully acquiesced in and ratified such a settlement, and is now debarred of any right to claim an account of the defendant, its former debtor.
The argument of plaintiff, básed on the alleged ignorance of the bank, that the payment had been made in Confederate' notes, and on the ground that its silent acquiescence, based upon the belief that the payment had been made in specie, which was an error, and therefore not binding, as a means of escape from the legal consequences of such' an acquiescence, is answered in a statement made in his testimony by Mr. Goodwin, who in answer to an interrogatory, says:
“ With regard to the kind of funds in which said balance was paid,I have always understood that it was paid in Confederate State notes. IIow I came to this conclusion, I cannot just now specifically state.”
And by frequent acknowledgments in his letters, that the former-account between the two banks involved Confederate issue.
Our conclusion is that the fact, and all the details of the settlement were known to the Columbus Bank with sufficient certainty to place it-under the effect of the very rule invoked by plaintiff, as laid down by “Kerr on Fraud and Mistakes, pages 300 and 301,” as well as under the rule laid down by our own Supreme Court, in the following cases: Flower vs. Jones et al., 7 N. S. 143; Dupré vs. Splane, 16 L. 51; Starr vs. Zacharie, 18 L. 517 ; Bonneau vs. Poydras, 2 R. 1; Ward vs. Warfield, 3 A. 468; Flower vs. Downs, 6 A. 538 ; Margum vs. Bell, 20 A. 215 ; Ball vs. Bender, 22 A. 493; Oliver vs. Johnson, 24 A. 460.
In the case of 3 A. hereinabove quoted, it was held that the acts of an agent who had committed a breach of orders; will bind the principal, if he subsequently, and with full knowledge, assents even for a moment to the acts of his said agent.
The same rule applies to payments made by a debtor, of moneys held *160 by him for account of his creditor. Under these views we find no necessity of passing upon the other defenses urged by the defendant.
It is therefore ordered, adjudged and decreed, that the judgment of the lower court be annulled, avoided and reversed, and that there be judgment in favor of defendants, rejecting plaintiff’s demand at his costs in both eourts.
Rehearing refused.